**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | |
|---|---|
| **JEFFREY JACOBS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No.  2:09-cv-2599** |
| ) | |
| **MEMPHIS CONVENTION AND** ) | |
| **VISITORS BUREAU** <u>et</u> <u>al.</u>, ) | |
| ) | |
| **Defendants.** ) | |

---

**ORDER GRANTING DEFENDANT TENNESSEE DEPARTMENT
OF TOURIST DEVELOPMENT'S MOTION TO DISMISS**

---

Before the Court is Defendant Tennessee Department of Tourist Development's ("the Department") Motion to Dismiss filed on February 1, 2010.  (D.E. #54.)  Plaintiff Jeffrey Jacobs ("Plaintiff") filed a response in opposition on February 26, 2010.  For the reasons stated below, the Department's motion to dismiss is **GRANTED**.

**I. BACKGROUND**[1]

Plaintiff, a resident of Memphis, Tennessee, is duly registered with the United States Copyright Office as the holder of copyrights in several professional photographs of various Memphis-area landmarks.[2]  (Pl.'s Compl. ¶¶ 23, 67-68.)  Plaintiff in turn granted Defendant Memphis Convention and Visitors Bureau ("Visitors Bureau") limited licenses to certain of his copyrighted photographs.  (<u>Id.</u> ¶ 24.)  These licenses were nontransferable and required that a

---

[1] The following background facts are based upon Plaintiff's complaint and are assumed to be true for purposes of this motion only.

[2] Specifically, the photographs depict the Memphis Brooks Museum of Art, the Memphis Botanic Garden, the Fire Museum of Memphis, the Orpheum Theater, the Cannon Center for the Performing Arts, and the Memphis Cook Convention Center.  (<u>See</u> Pl.'s Compl. ¶ 68.)

copyright notice and credit line appear on all published uses of the photographs licensed by the Visitors Bureau.  (Id. ¶ 25.) [3]

More specifically, on or around January 6, 2003, Plaintiff granted the Visitors Bureau a limited license for use of a copyrighted photograph he created of the Memphis Brooks Museum of Art ("Brooks Museum Photograph").  (Id. ¶ 27.)  The license was limited to a period of twelve months and allowed the Visitors Bureau to use the Brooks Museum Photograph in its 2003/2004 Meeting Planner's Guide and its Tour Operator's Guide but in no other documents or publications.  (Id.)  On January 6, 2004, this license expired.  (Id. ¶ 28.)

Notwithstanding the fact that it had no license from Plaintiff allowing it to do so, the Visitors Bureau used the Brooks Museum Photograph in its 2009 Destination Guide.  (Id. ¶ 29.) The Visitors Bureau also reproduced, distributed, and publicly displayed the Brooks Museum Photograph on internet websites and in print media during the years 2007, 2008, and 2009 without a license.  (Id.)  Furthermore, the Visitors Bureau made the Brooks Museum Photograph available to the general public for downloading during those years and offered the photograph to the general public for use in e-cards and virtual postcards on the websites www.jubileeltd.biz, www.postcardsforyou.com, and www.mypostcards.com.  (Id. ¶¶ 30-31, 33-34.)

Though it likewise possessed no license from Plaintiff for the Brooks Museum Photograph, the Department reproduced, distributed, and publicly displayed the Brooks Museum Photograph on the website www.tnvacation.com.  (Id. ¶ 42.)  Additionally, several other named defendants reproduced, distributed, and publicly displayed the Brooks Museum Photograph on websites without possessing a license from Plaintiff.  (See id. ¶¶ 32-33, 35-41.)  Neither the

---

[3] While Plaintiff seeks redress for infringement of his copyrights in several photographs, the specific work relevant to Plaintiff's allegations against the Department is a photograph of the Memphis Brooks Museum of Art.  The Court will not include the alleged facts surrounding the asserted violations of Plaintiff's other works, as these allegations of infringement do not implicate the Department.

Department nor any other defendant had received authorization from Plaintiff to copy, display, or distribute his works during the time periods at issue in this case. (Id. ¶¶ 68-69.)

On September 14, 2009, Plaintiff filed suit in the United States District Court for the Western District of Tennessee.  Plaintiff sues the Department and several other defendants for copyright infringement, contributory copyright infringement, and vicarious copyright infringement.  See 17 U.S.C. § 501.  Plaintiff also sues the Visitors Bureau for breach of contract under state law.   The Department, as an arm of the State of Tennessee, now seeks dismissal of Plaintiff's claims against it on the grounds of sovereign immunity.

## II. LEGAL STANDARD

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure only tests whether a cognizable claim has been pled.  Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  To determine whether a motion to dismiss should be granted, the court examines the complaint, which must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  See Fed. R. Civ. P. 8(a)(2). It must also provide the defendant with fair notice of the plaintiff's claim as well as the grounds upon which it rests.  Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  While the complaint need not present detailed factual allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Scheid, 859 F.2d at 436-37.

Likewise, the complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555 (citation omitted).  The mere possibility that some set of undisclosed facts will support recovery is insufficient to overcome a

12(b)(6) challenge.  Twombly, 550 U.S. at 561; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").  On a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations made in the complaint and construes them in the light most favorable to the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96 (6th Cir. 2008); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983).  The court, however, only takes as true well-pled facts, and it will not accept legal conclusions or unwarranted factual inferences.  Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998); see Iqbal, 129 S. Ct. at 1949.

## III. ANALYSIS

### A. Sovereign Immunity and Its Exceptions

The Eleventh Amendment to the United States Constitution reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  Since its ratification in 1795, the Eleventh Amendment has effectively cloaked states with broad, though not absolute, immunity from suit in federal court.  See Nevada v. Hall, 440 U.S. 410, 420 n.19 (1979).  However, "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself."  Alden v. Maine, 527 U.S. 706, 728 (1999).  "The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design."  Id. at 728-29.  The scope of immunity enjoyed by the states is therefore more extensive than the text of the Eleventh Amendment alone would

suggest.[4]  See Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 753 (2002) ("[T]he

Eleventh Amendment does not define the scope of the States' sovereign immunity; it is but one

particular exemplification of that immunity.").

Because sovereign immunity limits the judicial power of the federal judiciary under

Article III of the Constitution, absent a valid abrogation of that sovereign immunity by Congress,

"a State will . . . not be subject to suit in federal court unless it has consented to suit, either

expressly or in the plan of the convention." Blatchford v. Native Village of Noatak and Circle

Village, 501 U.S. 775, 779 (1991) (internal quotation marks and citation omitted); see also

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 119-20 (1984) ("[The Eleventh

Amendment] . . . deprives a federal court of power to decide certain claims against States that

otherwise would be within the scope of Art. III's grant of jurisdiction."). Thus, states are subject

to suit by another state in federal court and the United States may sue a state in federal court

because "[i]n ratifying the Constitution, the States consented to suits brought by other States or

by the Federal Government."[5]  Alden, 527 U.S. at 755; see Principality of Monaco v.

Mississippi, 292 U.S. 313, 328-29 (1934) (describing jurisdiction over suits between states as "a

necessary feature of the formation of a more perfect Union" and over suits by the United States

against a state as "inherent in the constitutional plan"); see also Blatchford, 501 U.S. at 781-82;

cf. U.S. Const. art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, . . .

[and] to Controversies between two or more States."). The United States Supreme Court has

also recently held that "[i]n ratifying the Bankruptcy Clause, the States acquiesced in a

---

[4] For example, although the Eleventh Amendment speaks of "suit in law or equity," states enjoy sovereign immunity in admiralty proceedings as well.  See Welch v. Tex. Dep't of Highways and Pub. Transp., 483 U.S. 469, 472-73 (1987) (plurality opinion); see also Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 683 n.17 (1982).

[5] A state is generally not susceptible to a federal court action brought by a foreign nation.  Welch, 483 U.S. at 487 (citing Principality of Monaco, 292 U.S. at 331) (plurality opinion).  Nor may an Indian tribe sue a state in federal court.  Blatchford, 501 U.S. at 782.

subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts." Cent. Virginia Comm. Coll. v. Katz, 546 U.S. 356, 378-79 (2006) (italics altered to underlining). Additionally, under the exception created by Ex parte Young, 209 U.S. 123 (1908), "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]" S&M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008).

Nevertheless, sovereign immunity generally precludes any private party—whether or not a citizen of the state to be sued—from naming a nonconsenting[6] state as a defendant in a federal court action. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997) (citing Hans v. Louisiana, 134 U.S. 1 (1890)); Edelman v. Johnson, 415 U.S. 651, 662-63 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). A state's sovereign immunity also shields "instrumentalities" or "arms" of the state, though this does not include counties or municipalities. S.J. v. Hamilton County, Ohio, 374 F.3d 416, 419-20 (6th Cir. 2004). Therefore, the successful prosecution of a civil action against a state (or an arm of the state) in federal court without the state's consent requires that Congress have abrogated the state's federal court sovereign immunity for the claim being asserted.

---

[6] A state may choose to waive its sovereign immunity by voluntarily and affirmatively invoking the jurisdiction of the federal courts or by clearly and unequivocally stating that it consents to be sued in federal court. See Coll. Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76 (1999). A state may, however, elect to maintain immunity from suit in federal court while waiving its immunity for actions brought in its own state courts. Pennhurst, 465 U.S. at 99 n.9 ("[T]he Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."); Johns v. Supreme Court of Ohio, 753 F.2d 524, 527 (6th Cir. 1985) ("[T]he fact that the state has waived immunity from suit in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts."); Ohio v. Madeline Marie Nursing Homes No. 1 and No. 2, 694 F.2d 449, 460 (6th Cir. 1982) ("[W]here the sovereign consents to be sued in a specially designated court, any resulting waiver is not general but is confined to actions brought in the forum designated."). States thereby retain the ability to deprive a plaintiff of the right to bring suit in a federal forum, even if the federal courts would otherwise have jurisdiction over the controversy.

To properly abrogate state sovereign immunity, Congress must "make[] its intention to abrogate unmistakably clear in the language of the statute and act[] pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003). Because Article I of the Constitution does not grant Congress any general power to pass legislation abrogating state sovereign immunity, Congress's ability to subject states to suit in federal court is restricted to legislation passed pursuant to § 5 of the Fourteenth Amendment.[7] Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 364 (2001) ("Congress may not, of course, base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I."); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 59-60, 66 (1996) (overruling prior holding that Congress could abrogate state sovereign immunity under the Interstate Commerce Clause of Article I).

Article I, Section 17 of the Tennessee Constitution provides that the State of Tennessee retains its sovereign immunity from claims against it unless the state legislature has expressly removed that immunity. See Tenn. Const. art. I, § 17; State v. Thompson, 197 S.W.3d 685, 691-92 (Tenn. 2006). Plaintiff in the instant case concedes that the State of Tennessee has not consented to be sued in federal court for copyright infringement and that the State of Tennessee has also not waived its immunity by affirmatively invoking the jurisdiction of the federal courts. Plaintiff further concedes that the Department qualifies as an arm of the State of Tennessee.[8] Therefore, Plaintiff's action can be maintained only if Congress has validly abrogated the states' sovereign immunity for claims of copyright infringement.

---

[7] Section 5 of the Fourteenth Amendment, also known as the Fourteenth Amendment's Enforcement Clause, reads: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5. The relevant Fourteenth Amendment guarantee in this case is the right to due process contained in § 1. See id. § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]").

[8] See Tenn. Code Ann. §§ 4-3-101(20), -2201.

**B. The Copyright Remedy Clarification Act of 1990: Article I versus Amendment XIV**

In 1990, Congress passed the Copyright Remedy Clarification Act ("Copyright Remedy Clarification Act" or "Act"), Pub. L. No. 101-553, 104 Stat. 2749 (codified at 17 U.S.C. §§ 501(a), 511).[9]  See Hairston v. N.C. Agric. & Tech. State Univ., No. 1:04-cv-1203, 2005 WL 2136923, at *3 (M.D.N.C. Aug. 5, 2005) (discussing passage of the Act).  The language enacted with passage of the Act and now codified at 17 U.S.C. § 511[10] provides as follows:

> (a) In General.—Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122, for importing copies of phonorecords in violation of section 602, or for any other violation under this title.
>
> (b) Remedies.—In a suit described in subsection (a) for a violation described in that subsection, remedies (including remedies both at law and in equity) are available for the violation to the same extent as such remedies are available for such a violation in a suit against any public or private entity other than a State, instrumentality of a State, or officer or employee of a State acting in his or her official capacity. Such remedies include impounding and disposition of infringing articles under section 503, actual damages and profits and statutory damages under section 504, costs and attorney's fees under section 505, and the remedies provided in section 510.

17 U.S.C. § 511(a)-(b).

---

[9] "In addition to passing the . . . [Copyright Remedy Clarification Act], Congress also passed the Patent and Plant Variety Protection Remedy Clarification Act ('Patent Remedy Act') of 1992, Pub. L. No. 102-560, 106 Stat. 4230 (codified at 35 U.S.C. §§ 271(h), 296(a)), and the Trademark Remedy Clarification Act of 1992 ('TRCA'), Pub. L. No. 102-542, 106 Stat. 3567 (codified at 15 U.S.C. §§ 1051, 1114, 1122).  All three statutes expressly purport to waive the States' Eleventh Amendment immunity from liability for violations of federal trademark, copyright, and patent law."  Hairston, 2005 WL 2136923, at *3.

[10] The Copyright Remedy Clarification Act also added language to § 501 clarifying that, as used in the statute, the term "anyone" includes states, their instrumentalities, and their officers and employees.  See 17 U.S.C. § 501(a).

The plain language of the Act clearly expresses Congress's intent to abrogate the states' sovereign immunity with respect to claims of copyright infringement—a point the Department concedes.   Accordingly, the first criterion for finding an abrogation of state sovereign immunity—viz., a clear statement in the text of the legislation exhibiting Congress's intention to remove state immunity—is satisfied.  See Seminole Tribe, 517 U.S. at 55 ("Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.") (internal quotation marks and citation omitted)); Hoffman v. Conn. Dep't of Income Maint., 492 U.S. 96, 101 (1989) ("[T]o abrogate the States' Eleventh Amendment immunity from suit in federal court, . . . Congress must make its intention 'unmistakably clear in the language of the statute.'") (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985)).

The next step in the Court's inquiry must be whether the abrogation constituted a valid exercise of Congress's power under § 5 of the Fourteenth Amendment.  If acting pursuant to § 5, Congress may "abrogate state sovereign immunity by authorizing private suits for damages against the States" to redress direct violations of the rights secured by the Fourteenth Amendment.  United States v. Georgia, 546 U.S. 151, 158-59 (2006).  In order to deter or remedy violations of Fourteenth Amendment rights, § 5 of the Fourteenth Amendment also enables Congress to enact prophylactic legislation making actionable—under certain circumstances—state conduct that is not itself unconstitutional.  City of Boerne v. Flores, 521 U.S. 507, 518 (1997).  For prophylactic legislation to be valid, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."  Id. at 520.  The requirement of congruence and proportionality exists because § 5 grants Congress the power to remedy violations of the Fourteenth Amendment, but confers no authority to establish substantive constitutional rights.  Id.   Importantly, "the congruence and

proportionality requirement applies only to prophylactic legislation . . . [and does not] . . . apply to a direct remedy for unconstitutional conduct."  Alaska v. EEOC, 564 F.3d 1062, 1068 (9th Cir. 2009) (en banc), cert. denied sub nom. Office of Alaska Governor v. EEOC, 130 S. Ct. 1054 (2010); see Georgia, 546 U.S. at 158 ("While the Members of this Court have disagreed regarding the scope of Congress's 'prophylactic' enforcement powers under § 5 of the Fourteenth Amendment, no one doubts that § 5 grants Congress the power to 'enforce . . . the provisions' of the Amendment by creating private remedies against the States for actual violations of those provisions.") (internal citations omitted).

The legislative history of the Copyright Remedy Clarification Act unambiguously reveals that Congress intended to remove the states' sovereign immunity by means of Article I—namely, the Copyright Clause, see U.S. Const. art. I, § 8, cl. 8—rather than by means of § 5.[11]  See H.R. Rep. No. 101-282 (1989), reprinted in 1990 U.S.C.C.A.N. 3949, 3955 (discussing bill in relation to Congress's power under the Copyright Clause); see also S. Rep. No. 101-305 (1990), 1990 WL 259306 (June 5, 1990) (same).  Congress's reliance on Article I is unsurprising since passage of the Act preceded the 1996 decision in Seminole Tribe precluding abrogation of state immunity under Article I.  In fact, the law's enactment followed shortly after the Supreme Court issued its decision in Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989), a ruling which upheld an abrogation of state sovereign immunity under Congress's power to regulate interstate commerce, see U.S. Const. art. I, § 8, cl. 3, and the House and Senate Reports discuss the importance of Union Gas to the legislation Congress eventually crafted.  The circumstances surrounding the Act's passage are explained in Nimmer on Copyright:

---

[11] In point of fact, review of the legislative record shows that the Copyright Remedy Clarification Act was a reaction to Atascadero and its progeny and that Congress viewed the Act as a means of achieving the abrogation of state sovereign immunity it had originally intended to effect as part of the Copyright Act of 1976.  See, e.g., H.R. Rep. No. 101-282, 1990 U.S.C.C.A.N at 3953-55.

In late 1987, Representative Kastenmeier requested that the Copyright Office prepare a "green paper" on the status of states' Eleventh Amendment immunity from infringement actions; by June 1988, the Register had complied.  After an exhaustive analysis of Eleventh Amendment precedents, the Register recommended that Congress await the Court's ruling in the pending appeal from United States v. Union Gas Co.  If that case validated Congress' authority to abrogate Eleventh Amendment immunity under Article I, then the Register suggested an amendment to the Copyright Act explicitly making states liable as defendants for infringement.  Conversely, if that case forbade such abrogation, he suggested an amendment to the jurisdictional statute, subjecting states to infringement actions in state courts.  In 1989, a bitterly divided Court handed down its ruling in Pennsylvania v. Union Gas Co.  A bare majority concluded that the environmental statutes at issue there evinced an explicit Congressional intent to hold the states liable as defendants.  A plurality then concluded that the Commerce Clause grants Congress the constitutional authority to enact such an abrogation to the states' Eleventh Amendment immunity.  Justice White, who had disagreed with the statutory interpretation, provided the crucial fifth vote in agreement with the constitutional conclusion.  Based on Union Gas' conclusion that Congress may, in the exercise of its Article I authority, abrogate state Eleventh Amendment immunity, Congress followed up on the recommendations contained in the Register's Report.

3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.01 [E][2][b] (Matthew Bender rev. ed. 2010) (footnotes and paragraph breaks omitted) (italics in original altered to underlining).

Although there exist older cases suggesting a contrary view, the Supreme Court has more recently disapproved of attempts to justify the legitimacy of legislation abrogating state sovereign immunity on a constitutional basis different from that upon which Congress premised the abrogation at the time of the law's enactment.  See Chavez v. Arte Publico Press, 204 F.3d 601, 605 (5th Cir. 2000) (contrasting Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll.

Savs. Bank, 527 U.S. 627, 642 n.7 (1999) with earlier cases).[12]   Even before the Supreme Court

expressed disapproval of sustaining an abrogation of state sovereign immunity on an alternative

basis, one federal district court had found that Congress enacted the Copyright Remedy

Clarification Act under Article I rather than the Fourteenth Amendment and thus for that reason

alone declared the Act's abrogation of state sovereign immunity invalid.   Jehnsen v. N.Y. State

Martin Luther King, Jr., Inst. for Nonviolence, 13 F. Supp. 2d 306, 311 (N.D.N.Y. 1998) ("Thus,

due to the fact that the copyright legislation was authorized by Article I and not the Fourteenth

Amendment, Congress is without authority to abrogate state sovereign immunity for copyright

cases.").   Although the Department has not argued that the legislative record precludes Plaintiff

from relying on § 5 to support the constitutionality of the Copyright Remedy Clarification Act,

the Court finds that the Act was undoubtedly passed pursuant to Article I and therefore cannot be

defended and sustained as prophylactic legislation under the Fourteenth Amendment.   Even

assuming, however, that Plaintiff is not precluded from defending the Copyright Remedy

Clarification Act's abrogation as an exercise of Congress's § 5 power, the Court would

nevertheless find that Congress's actions were insufficient to deprive the Department of its

sovereign immunity.

## C. The **Florida Prepaid** Decision

In arguing against the constitutionality of the Copyright Remedy Clarification Act, the

Department relies upon the decision in Florida Prepaid Postsecondary Education Expense Board

v. College Savings Bank, 527 U.S. 627 (1999), a case in which the Supreme Court considered

the Patent and Plant Variety Protection Remedy Clarification Act ("Patent Remedy Act").   As

with the 1990 legislation for copyright claims, Congress passed the Patent Remedy Act to

---

[12]   The Court in Florida Prepaid considered an act abrogating state sovereign immunity that Congress had passed
specifically citing two Article I clauses (the Patent and Interstate Commerce Clauses) as well as § 5 of the
Fourteenth Amendment.   527 U.S. at 635.

remove the states' sovereign immunity for claims of patent infringement and to thereby force an infringing state to be subject to the same liability and remedies as a private infringer.[13]  Florida Prepaid, 527 U.S. at 632-33.  Upon being sued for patent infringement, the State of Florida challenged Congress's removal of its immunity.  The Supreme Court agreed with the plaintiff in Florida Prepaid that a patent holder's intellectual property rights in the patent qualify as "property" protected by the Due Process Clause of the Fourteenth Amendment.  Id. at 642-43.  The Court proceeded, however, to make clear that a state's infringement of a patent is not a per se constitutional violation.  Id. at 643.  "Instead, only where the State provides no remedy, or only inadequate remedies, to injured patent owners for its infringement of their patent could a deprivation of property without due process result."  Id.

Evaluating the facts surrounding enactment of the Patent Remedy Act, the Supreme Court found that Congress "barely considered the availability of state remedies for patent infringement and hence whether the States' conduct might have amounted to a constitutional violation under the Fourteenth Amendment."  Id.  Given that an action for patent infringement does not require proof that the infringer acted intentionally, the Patent Remedy Act would also have imposed liability on states for unintentional conduct, notwithstanding Supreme Court precedent holding that "a state actor's negligent act that causes unintended injury to a person's property does not 'deprive' that person of property within the meaning of the Due Process Clause."  Id. at 645.  Additionally, the Court concluded that the record before Congress did not support a finding of widespread patent infringement by the states.  Id. at 645-46.  "Despite subjecting States to this expansive liability, Congress did nothing to limit the coverage of the [Patent Remedy] Act to cases involving arguable constitutional violations, such as where a State refuses to offer any state-court remedy for patent owners whose patents it had infringed." Id. at

---

[13] The specific provisions of the law at issue were codified at 35 U.S.C. § 271(h) and 35 U.S.C. § 296(a).

646-47.  As a result, the Court held that the Patent Remedy Act's purported abrogation of state sovereign immunity lacked the congruence and proportionality required of prophylactic legislation under § 5 of the Fourteenth Amendment and reversed the two lower courts' rejections of Florida's sovereign immunity defense.  Id. at 648.  Writing for himself and three other dissenters, Justice Stevens argued that the Patent Remedy Act should have been upheld as "an appropriate exercise of Congress' power under § 5 of the Fourteenth Amendment to prevent state deprivations of property without due process of law."  Id. at 649 (Stevens, J., dissenting).

The Supreme Court has yet to review the Copyright Remedy Clarification Act, but the United States Court of Appeals for the Fifth Circuit—the sole federal court of appeals to have addressed the legislation—has declared the Act's removal of state sovereign immunity invalid. Chavez, 204 F.3d at 608.  The Fifth Circuit's decision rests largely on the Florida Prepaid opinion and finds the same constitutional infirmities with the Copyright Remedy Clarification Act that the Supreme Court found with the Patent Remedy Act.  Chavez, 204 F.3d at 605-08; see also Rodriguez v. Tex. Comm'n on the Arts, 199 F.3d 279, 281 (5th Cir. 2000).  Several federal district courts have likewise found that Congress exceeded its constitutional authority in purporting to abrogate state sovereign immunity for all copyright claims brought by private parties.[14]  See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of Univ. Sys. of Ga., No. 3:07-CV-084 (CDL), 2008 WL 1805439, at *16 (M.D. Ga. Apr. 18, 2008); Mktg. Information Masters, Inc. v. Bd. of Trustees of the Cal. State Univ. Sys., 552 F. Supp. 2d 1088, 1094 (S.D. Cal. 2008); InfoMath, Inc. v. Univ. of Ark., 633 F. Supp. 2d 674, 680-81 (E.D. Ark. 2007); De Romero v. Inst. of Puerto Rican Culture, 466 F. Supp. 2d 410, 418 (D.P.R. 2006); Hairston, 2005 WL 2136923, at *8; Salerno v. City Univ. of N.Y., 191 F. Supp. 2d 352, 355-56 (S.D.N.Y.

---

[14] The parties have cited no decision from any court reaching the opposite conclusion; nor has the Court's own research uncovered any contrary judicial opinion.

2001); see Jehnsen, 13 F. Supp. 2d at 311; see also Rainey v. Wayne State Univ., 26 F. Supp. 2d 973, 976 (E.D. Mich. 1998) (finding state university immune from copyright suit for damages but not discussing Copyright Remedy Clarification Act).  This Court, however, is not bound by these decisions and must therefore conduct an independent assessment of Congress's decision to render states liable for copyright infringement.

## D. The Copyright Remedy Clarification Act as Prophylactic Legislation

Plaintiff's complaint does not allege that the Department engaged in an actual violation of his constitutional rights, and in responding to the Department's motion, he makes no attempt to argue that liability under § 511 is a remedy for a direct violation of the Fourteenth Amendment.[15]  See Georgia, 546 U.S. at 158; cf. Nat'l Ass'n of Bds. of Pharmacy, 2008 WL 1805439, at *7 ("If a plaintiff alleges a statutory violation that is also an actual constitutional violation, the court need not examine whether the statute could validly prohibit facially constitutional conduct under the City of Boerne test.") (italics altered to underlining).  Plaintiff instead defends the Copyright Clarification Remedy Act as prophylactic legislation.[16]  To assess the appropriateness of prophylactic legislation under § 5, a reviewing court typically must (1) "identify with some precision the scope of the constitutional right at issue," Garrett, 531 U.S. at 365; see Tennessee v. Lane, 541 U.S. 509, 522 (2004); (2) "examine whether Congress identified a history and pattern of unconstitutional" conduct by the states, Garrett, 531 U.S. at 368; see Lane, 541 U.S. at 523-24; and (3) then ensure that where Congress has sought to make states liable for conduct which is not itself unconstitutional there exists congruence and proportionality

---

[15] Similarly, because Plaintiff does not allege a constitutional violation by the Department and instead limits his allegations to claims of simple copyright infringement, Plaintiff's attempt to rely upon the distinction between a facial challenge and an as-applied challenge, as well as any attempt to rely upon the logic of United States v. Georgia, 546 U.S. 151 (2006), is unavailing.  See Nat'l Ass'n of Bds. of Pharmacy, 2008 WL 1805439, at *7-11.

[16] As discussed below, the Act makes states liable for much conduct that is not itself unconstitutional.

between the scope of the remedy and the wrong to be addressed, <u>Lane</u>, 541 U.S. at 530; <u>City of Boerne</u>, 521 U.S. at 530; <u>see, e.g.</u>, <u>InfoMath, Inc.</u>, 633 F. Supp. 2d at 679.

### 1. Identification of the Constitutional Right at Issue

Plaintiff argues that the Copyright Remedy Clarification Act protects copyright holders against the deprivation of their intellectual property rights by the states without the due process of law guaranteed by the Fourteenth Amendment.  The Court has little difficulty agreeing with Plaintiff that copyrights, like patents, constitute a species of property.  <u>See</u> <u>Florida Prepaid</u>, 527 U.S. at 641-42 (concluding that patents are a "species of property"); <u>cf.</u> 17 U.S.C. § 201 (listing rights of copyright holders).  Accordingly, the Due Process Clause of the Fourteenth Amendment protects copyright holders—like the holders of patent rights—against state deprivation of their intellectual property rights without due process.  <u>Florida Prepaid</u>, 527 U.S. at 642 ("[Patents] are surely included within the 'property' of which no person may be deprived by a State without due process of law.  And if the Due Process Clause protects patents, we know of no reason why Congress might not legislate against their deprivation without due process under § 5 of the Fourteenth Amendment.").

### 2. Finding a Pattern of Unconstitutional Conduct to be Remedied

The next step in evaluating the appropriateness of Congress's abrogation of state sovereign immunity is to consider whether Congress enacted the legislation to counteract a pattern of unconstitutional conduct by the states.  In <u>Florida Prepaid</u>, the Supreme Court noted that the evidence before Congress when considering the Patent Remedy and Copyright Remedy Clarification Acts "centered on substantial use of copyrighted textbooks by state universities as well as state use of copyrighted music and computer software" rather than on instances of <u>patent</u> infringement by the states.  <u>Florida Prepaid</u>, 527 U.S. at 647 n.10.  Justice Stevens's dissenting

opinion went further and expressed his hope that the Copyright Remedy Clarification Act would

fare better than Congress's patent legislation precisely because of the evidence that Congress

received and considered regarding state infringement of copyrights.  In a dissent joined by three

other justices, he wrote:

> [T]here is hope that the Copyright Remedy Clarification Act of 1990 may be considered "appropriate" § 5 legislation.  The legislative history of that Act includes many examples of copyright infringements by States—especially state universities.  See Hearings on H.R. 1131 before the Subcommittee on Courts, Intellectual Property, and the Administration of Justice of the House Committee on the Judiciary, 101st Cong., 1st Sess., 93, 148 (1989); Hearing on S. 497 before the Subcommittee on Patents, Copyrights, and Trademarks of the Senate Committee on the Judiciary 101st Cong., 1st Sess., 148 (1989).  Perhaps most importantly, the House requested that the Register of Copyrights prepare a study, which he described in his transmittal letter as, "a factual inquiry about enforcement of copyright against state governments and about unfair copyright licensing practices, if any, with respect to state government use of copyrighted works.  I have also prepared an in-depth analysis of the current state of Eleventh Amendment law and the decisions relating to copyright liability of states, including an assessment of any constitutional limitations on Congressional action.  Finally, as you requested, the American Law Division of the Congressional Research Service has conducted a 50 state survey of the statutes and case law concerning waiver of state sovereign immunity." Register of Copyrights, R. Oman, Copyright Liability of States and the Eleventh Amendment (June 1988) (transmittal letter).  This report contains comments from industry groups, statistics, and legal analysis relating to copyright violations, actual and potential, by States. See id., at 5, 12, 14, 93-95.

Florida Prepaid, 527 U.S. at 658 n.9 (Stevens, J., dissenting) (underlining added).

Nevertheless, upon closer examination, the legislative record created during the

consideration of the Copyright Remedy Clarification Act does not establish that Congress found

a sufficient pattern of prior unconstitutional conduct by the states.  Although the Supreme Court

has not articulated precisely what constitutes a pattern of unconstitutional conduct, other cases

indicate that a pattern requires more than a small number of individual examples and instead arises from widespread and pervasive unconstitutional state conduct.  Compare Lane, 541 U.S. at 524-28 (finding sufficient evidence of a "pattern" where record showed "pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights") with Garrett, 531 U.S. at 369-71 (finding insufficient evidence of a "pattern" where Congress made only general finding and record before the court contained only "half a dozen examples" of unconstitutional conduct by states).  The instances of alleged copyright infringement cited in the House and Senate Reports accompanying the legislation and in the June 1988 report of the Register of Copyrights ("Register's Report") submitted to Congress were ultimately few in number and show nothing more than that some states have engaged in sporadic, individual acts of infringement.  See H.R. Rep. No. 101-282, 1990 U.S.C.C.A.N. at 3949-53; see also H.R. Rep. No. 101-887 (1990) (Conf. Rep.), reprinted in 1990 U.S.C.C.A.N. 3965; S. Rep. No. 101-305, 1990 WL 259306; Register of Copyrights, United States Copyright Office, Copyright Liability of the States and the Eleventh Amendment (1988) [hereinafter "Register's Report"].

The Senate Report succinctly summarizes the evidence compiled by the Register of Copyrights and contained in the Register's Report:[17]

> Respondents to the Copyright Office request related specific instances where State immunity has directly affected a copyright proprietor's rights.  A small business provided a training video to a Texas Federal prison to solicit sales. Officials copied the tape and returned the original without remuneration. The business now fears similar problems with other institutions.  The Motion Picture Association of America reports problems with State correctional

---

[17] In response to a notice it placed in the Federal Register, the Copyright Office received forty-five comments.  The bulk of the Register's Report (viz., pages 19 through 90), however, addresses the history of the Eleventh Amendment and sovereign immunity generally, not specific instances of infringement.  Although the Court has reviewed the entirety of the Register's Report—which comprises some 105 pages as well as three appendices—the most important parts are obviously those Congress cited and relied upon in the House and Senate Reports.

> institutions publicly showing motion pictures without authority. Although most discontinue unauthorized use when informed of the infringement, at least two States have asserted eleventh amendment immunity. A company that licenses performance rights for musical compositions withdrew an infringement suit against a community college because it was too expensive to contest the defendant's claim of sovereign immunity. Similarly, a nursing publisher could not afford to enjoin a nursing home affiliated with a State subdivision from operating an information center that copied and sold the publisher's works because the publisher couldn't recover attorney's fees and couldn't afford to proceed without their recovery.

S. Rep. No. 101-305, 1990 WL 259306 (citing <u>Register's Report</u> at 7-10.) (emphasis added).[18]

The <u>Register's Report</u> also provides some brief discussion of eight federal copyright cases filed against states since 1962 in which the states interposed a defense of sovereign immunity. <u>See generally</u> <u>Register's Report</u> at 90-98. Furthermore, the plaintiff in <u>National Association of Boards of Pharmacy v. Board of Regents of the University System of Georgia</u>, a civil case prosecuted in the United States District Court for the Middle District of Georgia, pointed to ten additional examples of alleged infringement discussed in testimony before the House Judiciary Committee's Subcommittee on Courts, Intellectual Property, and the Administration of Justice— the subcommittee to which the proposed legislation was referred in the House of Representatives.[19] <u>Nat'l Ass'n of Bds. of Pharmacy</u>, 2008 WL 1805439, at *13. These examples included "(1) withdrawal of a public university from photocopy license negotiations; and (2) state infringement of a car valuation guide book[.]" <u>Id.</u> (internal citations omitted). Moreover, the Senate Report includes a reference to testimony in which a computer software executive recounted that a state official told him that instead of purchasing three copies of certain

---

[18] The relevance of infringement by a <u>federal</u> prison to the issue of infringement by the <u>states</u> is, of course, limited.

[19] Although Plaintiff in the instant case cites and quotes certain statements from congressional testimony regarding the Copyright Remedy Clarification Act, neither Plaintiff nor the Department provided the Court with a copy of this testimony.

software as the state had originally planned, it would buy only one.  S. Rep. No. 101-305, 1990 WL 259306.  According to the testifying executive, the official cited news of a then-recent Ninth Circuit decision holding that states were immune from copyright suits as the reason for the smaller order.  Id.

While certainly not diminishing the unacceptability of copyright infringement—whether committed by a private party or a state—the Court must join the other courts that have reviewed the legislative record in concluding that the evidence before Congress failed to establish a widespread practice of copyright infringement by the states.[20]  See, e.g., Nat'l Ass'n of Bds. of Pharmacy, 2008 WL 1805439, at *14 ("Based on the foregoing, the evidence before Congress in enacting the . . . [Copyright Remedy Clarification Act] . . . is similar to the evidence before Congress when it enacted the . . . [Patent Remedy Act], although there were several more examples of copyright infringement than patent infringement.  However, there was no evidence of widespread violations of the copyright laws by the States and no evidence that unremedied copyright infringement by States 'had become a problem of national import.'") (quoting Florida Prepaid, 527 U.S. at 641).  Given the innumerable instances in which states utilize copyrighted works and have an opportunity to deprive copyright holders of their rights, the few alleged cases Congress uncovered do not appear indicative of an extensive practice by which states disregard intellectual property rights.  Cf. Garrett, 531 U.S. at 369-70.

More importantly, the legislative record is also inadequate because the House and Senate Reports as well as the Register's Report give no basis for concluding that these alleged acts—even assuming that each occurred as described and that each constituted a case of bona fide copyright infringement—amounted to deprivations of the copyright holders' due process rights

---

[20] The Court is mindful that this conclusion conflicts with certain express findings made by Congress during consideration of the legislation.  See, e.g., H.R. Rep. 101-282, 1990 U.S.C.C.A.N. at 3956.

under the Fourteenth Amendment.  That is, although some states may have infringed copyright holders' intellectual property rights,[21] the evidence does not establish that these acts necessarily violated the holders' constitutional protections against the deprivation of property without due process.  As the Supreme Court emphasized in <u>Florida Prepaid</u>, unintentional state action does not violate the Due Process Clause, and even intentional infringement of intellectual property rights by a state does not constitute a due process violation if the state provides an adequate remedy.  <u>Florida Prepaid</u>, 527 U.S. at 645; <u>see</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984) ("If negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available."); <u>see also</u> <u>Jefferson v. Jefferson County Pub. Sch. Sys.</u>, 360 F.3d 583, 587-88 (6th Cir. 2004).  There is no indication that Congress appreciated this legal dichotomy, and the House and Senate Reports do not distinguish between violations of copyright law and violations of the Fourteenth Amendment.  Nor does the <u>Register's Report</u> draw such a distinction.

Therefore, the Court finds that the legislative history of the Copyright Remedy Clarification Act fails to support the conclusion that Congress identified and acted to address a prevailing pattern of unconstitutional conduct by the states with respect to the intellectual property rights of copyright holders.  <u>Accord</u> <u>Chavez</u>, 204 F.3d at 605-06 ("Rather than expose a

---

[21] Plaintiff cites a few provisions of the Copyright Act that limit or preclude liability for certain very specific unintentional acts of infringement—17 U.S.C. §§ 405(b), 406(a), and 504(c)(2)—in attempt to show that Congress did not extend liability to the states excessively and that copyright law establishes a scheme that ultimately takes into consideration the intent of the infringer.  Copyright infringement, however, is at its core a strict liability cause of action, and copyright law imposes liability even in the absence of an intent to infringe the rights of the copyright holder.  <u>See, e.g.</u>, <u>King Records, Inc. v. Bennett</u>, 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006) ("Liability for copyright infringement does not turn on the infringer's mental state because a general claim for copyright infringement is fundamentally one founded on strict liability.") (internal quotation marks and citation omitted); <u>see also</u> <u>Warner Bros. Records, Inc. v. Walker</u>, __ F. Supp. 2d __, __ 2010 WL 1333147, *4 (W.D. Pa. Mar. 31, 2010) ("Thus, a defendant is liable even for 'innocent' or 'accidental infringements,' and a plaintiff need not demonstrate intent or even knowledge of infringement to prove a copyright claim.") (internal quotation marks and citation omitted).   None of the statutory provisions Plaintiff cites alters this fundamental tenet of the Copyright Act.

current epidemic of unconstitutional deprivations, the testimony before Congress worried principally about the potential for future abuse, . . . and the concerns of copyright owners about that potential[.]") (internal citations omitted); Nat'l Ass'n of Bds. of Pharmacy, 2008 WL 1805439, at 15; De Romero, 466 F. Supp. 2d at 418 ("In fact, what the legislative history shows is that more than consternation over actual or imminent copyright infringement by states in violation of the Due Process [C]lause, Congress was moved by its conclusion that it would be anomalous and unjustified for State . . . institutions to be exempt from certain remedies, while private institutions are not.") (internal quotation marks and citation omitted); see also Register's Report at 12, 15-17 (including discussion of potential for future harm).

### 3. Scope: Adequacy of State Law Remedies and Limitations on the Federal Remedy

Even if Congress had properly found a pattern of unconstitutional conduct by the states, however, the Court would still conclude that the scope of the remedy created by the Copyright Remedy Clarification Act and codified at § 511 of Title 17 lacks the congruence and proportionality required of a prophylactic remedy under § 5.  See City of Boerne, 521 U.S. at 530 ("While preventive rules are sometimes appropriate remedial measures, there must be a congruence between the means used and the ends to be achieved.  The appropriateness of remedial measures must be considered in light of the evil presented.") (citation omitted).  Like the Patent Remedy Act addressed in Florida Prepaid, § 511 exposes a state to liability for copyright infringement even if the state provides an otherwise adequate remedy for redressing claims of infringement.  Furthermore, § 511—again, like the Patent Remedy Act—exposes a state to liability even if the state's infringement was unintentional.  The necessity for such sweeping liability is fatally undermined by recognition of the extent to which Congress in enacting the Copyright Remedy Clarification Act failed to engage in a proper assessment of the

adequacy of existing state law remedies and also declined to place limits on the federal remedy ultimately created.  See, e.g., Nat'l Ass'n of Bds. of Pharmacy, 2008 WL 1805439, at *12.

### a. Adequacy of State Law Remedies

Plaintiff correctly notes that the Department has not shown how Tennessee state law provides an aggrieved copyright holder with an alternative remedy—such as by an action filed with the Tennessee Claims Commissions, the forum through which a claim against the State of Tennessee or one its arms is generally pursued, see Tenn. Code Ann. §§ 9-8-305(1), -307. Plaintiff, on the other hand, has not pointed to any evidence in the legislative history indicating that Congress considered the unavailability of remedies under state law in deciding to abrogate the states' immunity from federal suit, and the House and Senate Reports lack discussion of this topic.  As noted by another court, the record is "sparse" in terms of evidence that Congress took account of the existence and efficacy of any means of redress that the states themselves might have created.[22]  Nat'l Ass'n of Bds. of Pharmacy, 2008 WL 1805439, at *15 n.14; see Chavez, 204 F.3d at 606 & n.8 ("Instead of considering the adequacy of possible state remedies, Congress focused on the adequacy of injunctive relief, stating that injunctive relief was not adequate protection for copyright owners.").  Furthermore, the Fifth Circuit in Chavez found "only two allusions to state remedies in the legislative history" and remarked that the Register's Report "failed to include information on state remedies for the unlawful taking of private property by the state government."  Chavez, 204 F.3d at 606.

Apparently attempting to explain the absence of such considerations from the legislative record, Plaintiff erroneously asserts that Article I of the Constitution gives federal courts

---

[22] The Court acknowledges that an action for breach of contract—a claim other courts have suggested as a possible alternative state law remedy—would be unavailing for Plaintiff since he possessed no contract with the Department. The Court also acknowledges that the ability to obtain injunctive relief from a federal court against state officials under Ex parte Young for violations of intellectual property rights is limited.  See Pennington Seed, Inc. v. Prod. Exch. No. 299, 457 F.3d 1334, 1341-43 (Fed. Cir. 2006); cf. Seminole Tribe, 517 U.S. at 75-75.

exclusive jurisdiction over copyright claims.  To the contrary, not only does Article I address the powers of Congress rather than the jurisdiction of the federal courts, but a party generally may maintain a federal cause of action in state court unless Congress has precluded state court jurisdiction.  See Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 477-78 (1981) ("The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication."); see also Haywood v. Drown, 129 S. Ct. 2108, 2117 (2009) ("[H]aving made the decision to create courts of general jurisdiction that regularly sit to entertain analogous suits, . . . [a state] . . . is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy.").  Rather, Congress has chosen to limit copyright claims to federal court and to preempt state laws falling within the scope of copyright law.  See 17 U.S.C. § 301; Ritchie v. Williams, 395 F.3d 283, 285 (6th Cir. 2005) ("Section 301 of the Copyright Act broadly preempts state law claims, and federal law vests exclusive jurisdiction over such preempted copyright claims in the federal courts.").  In discussion of the Copyright Remedy Clarification Act, Congress pointedly declined to retreat from this exclusivity because of concerns that allowing actions in state court would undermine the uniformity of copyright law.  See H.R. Rep. No. 101-282, 1990 U.S.C.C.A.N. at 3957 ("Concurrent jurisdiction creates the potential for differing standards and results, depending on whether the forum is State or Federal.  Given that an essential premise of the Act is to create a uniform Federal system for the creation and enforcement of copyrights, the Committee rejects this suggestion.").  The Supreme Court's 1999 decision in Alden v. Maine bars Congress from attempting to use its powers under Article I—the constitutional provision by which, as concluded

above, Congress in fact purported to effect the abrogation—to compel a state to be amenable to private suit in its own state courts.   Alden, 527 U.S. at 754 ("In light of history, practice, precedent, and the structure of the Constitution, we hold that the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation."); see, e.g., Hauser v. Rhode Island, 640 F. Supp. 2d 143, 148 & n.6 (D.R.I. 2009).  This constraint, though, would not have been apparent to Congress during consideration and passage of the Copyright Remedy Clarification Act roughly a decade before Alden was decided.  For this reason, the Register's alternative suggestion should Union Gas have been decided differently—i.e., using Article I to subject states to suit in their own state courts when sued for copyright infringement, see Register's Report at 103-04—must also, in retrospect, be viewed as constitutionally flawed.

Therefore, the Court finds that Congress did not adequately consider the existence and efficacy of existing state law remedies prior to abrogating state sovereign immunity for copyright claims.

### b. Limitations on the Federal Remedy

As discussed above, because it abrogates the states' sovereign immunity and enables a state to be sued as if it were a private party, the federal remedy codified at § 511 permits a state to be sued for much state conduct that is not necessarily unconstitutional.  Discussing Congress's failure to adopt more limited alternatives to the remedy created by the Patent Remedy Act, the Supreme Court in Florida Prepaid observed:

> Despite subjecting States to this expansive liability, Congress did nothing to limit the coverage of the Act to cases involving arguable constitutional violations, such as where a State refuses to offer any state-court remedy for patent owners whose patents it had infringed. Nor did it make any attempt to confine the reach of the Act by limiting the remedy to certain types of infringement, such

> as nonnegligent infringement or infringement authorized pursuant
> to state policy; or providing for suits only against States with
> questionable remedies or a high incidence of infringement.

Florida Prepaid, 527 U.S. at 646-47. The very same must be said with equal force for Congress's actions with respect to the Copyright Remedy Clarification Act. The legislative history—at least as contained in the House and Senate Reports—does not show that Congress even considered these potential limitations and alternatives prior to abrogating the states' sovereign immunity. The Register's Report is similarly lacking in this regard. The alternatives discussed in the principal House Report concern the necessity of money damages (as opposed to simply injunctive relief), whether states should be liable for statutory damages and attorney's fees (as opposed to simply actual damages), whether to grant state courts concurrent jurisdiction over copyright claims, and whether to make the states' immunity comparable to that of the federal government.[23] See H.R. Rep. No. 101-282, 1990 U.S.C.C.A.N. at 3956-58. The Senate Report reveals that concern during that chamber's action centered on whether and to what extent attorney's fees should be available to a successful litigant. See S. Rep. No. 101-305, 1990 WL 259306. The Register's Report primarily concerns the inadequacy of injunctive relief. See Register's Report at 13-15.

---

[23] Since 1960, the federal government has been subject to suit for copyright infringement. See 28 U.S.C. § 1498(b); see, e.g., O'Rourke v. Smithsonian Inst. Press, 399 F.3d 113, 117 (2d Cir. 2005) (discussing 1960 act waiving federal government's sovereign immunity for copyright actions). An action against the United States must be filed in the United States Court of Federal Claims, and "[u]nder the statute, the remedies against the United States are limited, in that costs and an injunction cannot be awarded, and other relief is limited as well." 3 Nimmer & Nimmer, supra, § 12.01[E][1]. According to the interpretation in Nimmer on Copyright, the statute also deprives the court of discretion to increase statutory damages above the minimum amounts authorized by law. 3 Nimmer & Nimmer, supra, § 12.01[E][1] n.162 ("It would therefore appear that, in actions against the government, the court lacks discretion either to order impoundment and destruction of infringing articles . . . or to increase statutory damages above the minimum amount of $750 or, if applicable, $200 for innocent infringements.") (internal citations omitted). Furthermore, the range of infringing activities that can be attributed to the federal government under the statute is narrowly construed. See, e.g., Boyle v. United States, 200 F.3d 1369, 1373 (Fed. Cir. 2000). Even if Congress had decided to model the states' liability on that of the federal government, however, such an arrangement still would have made the states liable for acts of infringement that did not also constitute deprivations of due process.

While Congress's consideration of these alternatives does reflect some congressional sensitivity to the magnitude of the financial liability with which an offending state would be faced, it does not show that Congress attempted to minimize the number of actual cases in which a state would be held liable for actions that violated copyright law but that did not also deprive the plaintiff of due process. Moreover, it is not apparent to the Court why the scope of liability created by the Copyright Remedy Clarification Act must extend to so many state actions that do not amount to violations of the Fourteenth Amendment. Thus, the Court cannot find that Congress cabined the ambit of state liability as tightly as it could have and thereby ensured that its chosen remedy was proportional and congruent in relation to the constitutional harm to be redressed. Accord Chavez, 204 F.3d at 607; Nat'l Ass'n of Bds. of Pharmacy, 2008 WL 1805439, at *16.

### 4. Summary

In reaching this conclusion, the Court does not disparage the importance of intellectual property rights. The Framers saw fit to include the authority "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries," U.S. Const. art. I, § 8, cl. 8, among the enumerated powers granted to Congress by the Constitution. Since enactment of the first copyright statute in 1790 the federal government has extended protection to works deemed copyrightable, see Eldred v. Ashcroft, 537 U.S. 186, 194, 201 (2003), and for more than a century, federal law has supplemented civil liability with criminal penalties for those found guilty of copyright infringement, see Dowling v. United States, 473 U.S. 207, 221-23 & n.14 (1985) (discussing history of criminal liability for violations of federal copyright law); see also 17 U.S.C. § 506. "By establishing a marketable right to the use of one's expression, copyright

supplies the economic incentive to create and disseminate ideas." Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 558 (1985).  Protection of copyright creates the economic incentive for the development of creative works and ultimately advances the general public good. Id. (citing Twentieth Cent. Music Corp. v. Aiken, 422 U.S. 151, 156 (1975) and Mazer v. Stein, 347 U.S. 201, 219 (1954)).

The importance of the interest to be protected, however, cannot override the obligation of Congress to abide by the limitations placed upon it by the Constitution.  Examination of the legislative history behind enactment of the Copyright Remedy Clarification Act first reveals that Congress passed this legislation pursuant to Article I rather than the Fourteenth Amendment. Additionally, Congress did not create a record sufficient to justify prophylactic legislation abrogating state sovereign immunity under § 5 of the Fourteenth Amendment.  Specifically, the record fails to establish a pattern of unconstitutional conduct, fails to demonstrate that existing state law remedies are inadequate, and fails to show that the federal remedy proscribes and makes actionable no more facially constitutional state conduct than reasonably necessary in relation to the nature of the constitutional harm to be addressed.

The necessity of meeting these particular prerequisites for prophylactic legislation would not have been evident to Congress in 1990, but the validity of Congress's actions must be judged by the law as it currently stands.  Therefore, the attempt at abrogation of state sovereign immunity contained in the Copyright Remedy Clarification Act of 1990, codified at 17 U.S.C. § 511, cannot be sustained as appropriate prophylactic legislation under § 5 of the Fourteenth Amendment.  Accordingly, Plaintiff's claims against the Department, an arm of the State of Tennessee, must be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, the Department's motion is **GRANTED**, and Plaintiff's claims

against the Department are **DISMISSED**.

**IT IS SO ORDERED**, this 10th day of May, 2010.

s/Bernice Bouie Donald
**BERNICE BOUIE DONALD**
**UNITED STATES DISTRICT JUDGE**
